UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE SHAYA,

    Plaintiff,

v.

DAVID BELCASTRO, et al.,

    Defendants.

_____/

Case No. 14-cv-11112
Hon. Matthew F. Leitman

## **OPINION AND ORDER GRANTING DEFENDANT DAVID BELCASTRO'S MOTION TO DISMISS (ECF #51)**

## **INTRODUCTION**

In this action, Plaintiff Steve Shaya ("Shaya"), an employee of the City of Hamtramck, Michigan (the "City"), claims that Defendant David Belcastro ("Belcastro"), a private citizen, committed a number of common law torts against him and violated his constitutional rights. All of Shaya's claims against Belcastro rest upon Shaya's theory that Belcastro conspired with several City police officers – who allegedly held a pre-existing grudge against Shaya – to frame Shaya for a hit-and-run car accident. But Shaya has not pleaded any *facts* connecting Beclastro to the officers in question. Nor has Shaya pleaded sufficient facts to establish that Belcastro knowingly and intentionally implicated Shaya in the hit-and-run, or that Belcastro even knew who Shaya was. While Belcastro reported to police that his

1

vehicle had been hit and provided a description of the offending vehicle, Belcastro repeatedly insisted that he could *not* identify the driver, and the only information that Belcastro did provide about the driver – that he was a "black male" – was flatly *inconsistent* with Shaya. Simply put, Shaya's theory that Belcastro purposefully joined the City officers' campaign to retaliate against Shaya is not plausible – and, indeed, is mere conjecture – given the lack of any factual allegations tying Belcastro to either the officers or to Shaya. Accordingly, the Court will **GRANT** Belcastro's motion to dismiss Shaya's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Belcastro's "Motion," ECF #51.)

## SHAYA'S RELEVANT FACTUAL ALLEGATIONS[1]

A.  **Background of the Alleged Scheme to Retaliate Against Shaya**

Shaya is the Director of the City's Department of Public Services. (Shaya's Fourth Amended Complaint (the "Complaint"), ECF #48 at ¶9.) In connection with that position, Shaya drives a City-owned 2008 Chevrolet TrialBlazer with the license plate 092x447. (*See id.* at ¶¶ 35, 43.)

In late 2011, Shaya accused Defendant Adam Tardif ("Tardif"), a sergeant with the City's police department, of "operating a towing business" that was "billing the City of Hamtramck Police [Department] drug forfeiture fund for

---

[1] The Court accepts Shaya's allegations as true for purposes of ruling on Belcastro's motion.

2

towing services" in violation of the City's ethics policies and contracts. (*Id.* at ¶22.) After Shaya alerted City officials to Tardif's actions, the City "took remedial measures to ensure that … Tardif would not conduct any further unauthorized towing operations…." (*Id.* at ¶24.) Shaya says that Tardif then began a campaign to retaliate against him and that the campaign involved an effort to frame him for a crime.

**B.     Belcastro's Accident Report**

At approximately 12:36 p.m. on November 15, 2013, Belcastro, a former Detroit Police Officer and current private detective, called the City's 911 police dispatch center to report that he had been the victim of a hit-and-run car accident. (*See id.* at ¶44.) Belcastro and the dispatch operator had the following conversation:

> **Dispatch:** Hamtramck 911... what's your emergency?
>
> **Victim:** My name is Dave Belcastro and I am a retired police officer from Detroit, I was rear ended on Conant, south of Caniff, and the vehicle took off on me, and I think I got the vehicle and following it westbound on Caniff... just west of Campau currently.
>
> **Dispatch:** Did this just happen?
>
> **Victim:** Yeah just happened a short time ago and I pulled off on side street and the guy continued on, so I came up on the Avenue.
>
> **Dispatch:** Ok

**Victim:** I think, I think this is the vehicle... aah wow

**Dispatch:** Yes, No, Maybe.

**Victim:** I think its 092 X Ray 447, *I might be wrong on the vehicle... because I lost its*, Trail Blazer, municipal vehicle... *that might not be the one*. I would only know if I saw the front end. Like I said I got rear ended... I pulled over on Caniff/Sobieski..., *I'm not sure*, no it wasn't Sobieski, it was south of Caniff... anyway and I am currently on Brombach/Evaline going south on Brombach... that might not be the vehicle? Like I said, I had to check back up to it... but I got rear ended on my personal vehicle.

**Dispatch:** Where are you at now so I can have officers meet you there.

**Victim:** Ahh, I'm just passing Norwalk coming up on Poland & Brombach.

**Dispatch:** ok, do you want them to meet you out there or you want to come to the station.

**Victim:** Yeah whatever is easier for you guys?

**Dispatch:** Probably easier if you come in sir.

**Victim:** OK.

**Dispatch:** Will let the boss know...

**Victim:** Ahh, I'm, like I said *I couldn't give you an idea of the face... it appeared to be a black male, and I don't know if this is the vehicle*. I can't see front end?

**Dispatch:** *So this is not the Trail Blazer*?

**Victim:** *That's not probably not the vehicle.*

> **Victim:** *Its [sic] probably not*, like I said I had to turn around and catch up to it, the guy was squirting ahead on me... anyways you guys are on Evaline aren't you?
>
> **Dispatch:** 3401 Evaline, just past Gallagher.
>
> **Victim:** OK, I will head into the station then... Thank you, sir. We'll see you in a minute.

(*Id.* at ¶44; emphasis in italics added.)  Tardif was on duty when Belcastro's call came in, and "Tardif frantically attempted to gain control of the incoming call from Belcastro."  (*Id.* at ¶45.)

## C. Tardif's Investigation Into Belcastro's Report

Tardif conducted the initial investigation into Belcastro's accident report, and he spoke with both Belcastro and Shaya. (*See* the "Case Report," ECF #48-6 at 3-4, Pg. ID 623-624.)  Belcastro "continued to report statements that were intentionally false to Sgt. Tardif that conveyed the false impression that a Chevy Blazer with Michigan plate number 092x447 was involved in a hit-and-run accident…."  (Compl. at ¶45.)  However, there is no indication that Belcastro specifically identified Shaya as the driver nor that Belcastro retreated from his statement to the 911 dispatcher that he suspected that the driver of the offending vehicle was a "black male."  Moreover, there is no indication – and Shaya does not allege any facts showing– that Belcastro had any knowledge of any possible connection between the Chevy TrialBlazer he described and Shaya.

In addition to interviewing Belcastro and Shaya, Tardif also "looked at [Shaya's] City vehicle" for damage and reviewed the "City Hall security camera system" in order to determine Shaya's whereabouts at the time of the alleged accident. (Case Report at 3, Pg. ID 623.) At the conclusion of his investigation, Tardif "determined that there [was a] strong probability that Steve Shaya was in fact involved in this hit and run accident and determined that [Shaya] [was] the at fault party in the incident." (*Id.* at 3-4, Pg. ID 623-624.)

### D.  The Investigation is Reassigned and Shaya is Charged

On November 18, 2013, "Tardif was removed from the hit-and-run investigation putatively over concerns …. [related to Tardif's] lack of impartiality." (Compl. at ¶52.) The City's Chief of Police thereafter assigned Sergeant Andy Mileski ("Mileski") – who is also a Defendant in this action – to lead the investigation into the alleged accident. (*Id.* at ¶55.)

As part of his investigation, Mileski interviewed Shaya. During that interview, Shaya "denied being involved in the accident" and denied being in the area where Belcastro claimed the accident occurred at the time Belcastro called 911. (Case Report at 5, Pg. ID 625.)

Mileski also interviewed Belcastro by telephone. During this phone interview, Belcastro was more certain about the description of the vehicle that struck him than he had been when he spoke to the 911 dispatcher days earlier.

6

Belcastro told Mileski that he was "sure of the plate of the vehicle" that hit him because he "caught up to the vehicle [that hit him] … [and] he go[t] the vehicle lic[ense] plate and called it in to the police department." (*Id.*) However, Belcastro repeated his earlier statement that "he could *not* identify the driver of the vehicle." (*Id.;* emphasis added*.*)

As a result of his investigation, Mileski decided to charge Shaya with leaving the scene of a property damage accident, a misdemeanor. As Mileski explained in the Case Report, "[a]fter reviewing all of the evidence and interviewing the victim and the suspect of the incident I came to the conclusion that there was enough evidence to show that Steve Shaya was driving the vehicle that was involved in an accident subsequently leaving the scene of said accident. I then issued citation #124283 for Leaving the Scene of an Accident to Shaya." (*Id.; see also* Compl. at ¶62.)

**E.     Mileski's Decision to Request Dismissal of the Charge Against Shaya**

Mileski served Shaya with the misdemeanor citation "at about 2:08 p.m. on 12/11/13." (Compl. at ¶63.) Approximately one hour later, Shaya "served [the City with] a Freedom of Information Act request [for] any and all written documents and voice recording[s] related to [the] 911 call of Belcastro." (*Id.* at ¶64.) Two hours after that request, Shaya received "a phone call from Mileski to

7

'tear-up' the appearance ticket." (*Id.* at ¶65.) Mileski told Shaya that the "matter [would] not be pursued." (*Id.*)

Mileski wrote in the Case Report that:

> [w]hen conducting a review of the case I realized that I had not listened to the 911 tape of the victim calling the station to report the accident. I then pulled the 911 call and listened to the tape. After listening to the tape I came to the conclusion that there was [sic] too many inconsistencies between the 911 tapes [sic] and the statements that were taken from the victim. At this time without any further evidence I did not feel I had enough of a case to go forward. I went to the Judge and requested the ticket I had already submitted be rescinded.

(ECF #48-6 at 5, Pg. ID 625.)

## SHAYA'S CLAIMS AGAINST BELCASTRO

The Complaint includes twenty-seven separate counts and ten Defendants. (*See* Compl., ECF #48.) It begins by detailing conflict and friction between Shaya and many City employees, including several of the other defendants in this action. (*See id.* at ¶¶17-41.) Shaya insists that he was the victim of a concerted effort by these City employees to demean and degrade him and to force him out of his job. (*See id.*) Shaya alleges that Belcastro joined the City employees' effort to harm him. (*See, e.g., id.* at ¶104.)

Belcastro is named in five counts of the Complaint. In Count II ("Malicious Prosecution") Shaya alleges that Belcastro and Officers Tardif and Mileski "institut[ed] … and continued a criminal hit-and-run charge punishable by up to

8

ninety (90) days in jail against [Shaya]." (*Id.* at ¶86.) Shaya further alleges that "there was an absence of probable cause for the proceeding" and that Belcastro and the officers were "motivated by malice." (*Id.* at ¶¶88-89.)

In Count III ("Abuse of Process") Shaya alleges that Belcastro and the officers "knowingly caused false police report documents to issue to incriminate [Shaya] with the intent to frame him as to an incident that was manufactured and fraudulent." (Compl. at ¶93.)

In Count V ("Violation of Federal Civil Rights Act of 1871 (42 USC 1983)") Shaya accuses Belcastro of violating Shaya's constitutional rights under the Equal Protection Clause, the Due Process Clause, and the Fourth Amendment. Shaya insists that Belcastro, a private citizen, may be held liable under Section 1983 because Belcastro conspired with the City employees to violate his constitutional rights. (*See id.* at ¶¶104-105.) Shaya says that "[t]he existence of said conspiracy involving Belcastro can be inferred reasonably by the collective conduct of Tardif and Belcastro." (*Id.* at ¶104.)

In Count VII ("Intentional Infliction of Emotional Distress") Shaya alleges that Belcastro's actions "constitute intentional and extreme conduct" that "were calculated to induce severe emotional and physical trauma to [Shaya]." (*Id.* at ¶111.)

9

Finally, in Count VIII ("Defamation Per Se") Shaya alleges that Belcastro's "intentionally false and defamatory comments regarding [Shaya] that impute the commission of a criminal offense of a hit-and-run accident" constitute "defamation per se." (*Id.* at ¶113.)

## GOVERNING LEGAL STANDARD

Belcastro seeks dismissal of Shaya's claims against him on the ground that they fail to state a claim upon which relief can be granted. *See* Fed. Rule. Civ. Proc. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion

to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*[2]

## ANALYSIS

### A. Shaya Has Failed to State a Claim Against Belcastro for Malicious Prosecution

In a malicious prosecution action under Michigan law, "[t]he plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365, 572 N.W.2d 603, 609-610 (1998). In Michigan, "actions for malicious prosecution have historically been limited by restrictions that make them difficult to maintain." *Id.* at 609. Indeed, they occupy a "disfavored status" under Michigan law. *King v. Arbic*, 159 Mich. App. 452, 406 N.W.2d 852, 857.

---

[2] "In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, and (3) documents that are a matter of public record." *Holliday v. Wells Fargo Bank, NA*, No. 13-cv-11062, 2013 WL 3880211, at *2 (E.D. Mich. July 26, 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Shaya's malicious prosecution claim fails because Belcastro did not accuse *Shaya* of anything and did not attempt to have a prosecution initiated *against Shaya*. Belcastro merely identified a vehicle that he believed had rear-ended him. Belcastro could not, and did not, identify the driver of the vehicle, and the meager physical description of the driver that he did offer – a "black male" – is flatly inconsistent with Shaya (who is not African American and does not allege nor argue that he could reasonably be mistaken for an African American). Moreover, Shaya has not alleged any facts that, if proven, would establish that Belcastro had any reason to know of any connection between Shaya and the vehicle he identified to the police. Shaya has not cited any case in which any court has held that a claim for malicious prosecution is available under these circumstances – i.e., where there is such an indirect and tenuous link between the defendant's accusations and the plaintiff – and the Court concludes that allowing Shaya's particular claim to proceed would be inconsistent with the Michigan Supreme Court's admonition that malicious prosecution actions should be "difficult to maintain." *Matthews*, 572 N.W.2d at 609.

Shaya has also failed to sufficiently allege that Belcastro acted with malice. Shaya says that Beclastro's malice may be inferred from his alleged lack of probable cause, but the Sixth Circuit in a recent published decision has squarely rejected that position. *See Alman v. Reed*, 703 F.3d 887, 902 (6th Cir. 2013) ("A

lack of probable cause itself cannot constitute malice, as that would render the third and fourth elements of the tort duplicative"). *But see Miller v. Sanilac County*, 606 F.3d 240, 250 (6th Cir. 2010) ("When a party is sued for malicious prosecution, a jury may infer malice from an absence of probable cause").

Moreover, and in any event, the Complaint does not contain any specific factual allegations that suggest that Belcastro ever had, or acted upon, malicious intentions *toward Shaya*. Indeed, Shaya does not allege that Belcastro knew Shaya, knew of Shaya, or even that Belcastro had ever heard Shaya's name. And, again, Belcastro did not identify Shaya as the driver of the vehicle that hit him and, in fact, gave a description that is inconsistent with Shaya. For all of these reasons, the Complaint fails to allege sufficiently that Belcastro maliciously accused Shaya of anything. The lack of sufficient malice allegations is fatal to Shaya's malicious prosecution claim.

**B. Shaya Has Failed to State a Claim Against Belcastro for Abuse of Process**

Under Michigan law, "[t]o recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose; and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 594 (1981). Shaya has failed to plead facts that that could establish either of these two elements.

First, Shaya has done no more than plead conclusory allegations that Belcastro acted with an "ulterior purpose." Shaya has not pleaded that Belcastro had any connection to Shaya, Tardif, or anybody else named in the Complaint, much less pleaded *facts* sufficient to establish that Belcastro had an "ulterior purpose" to frame Shaya for a hit-and-run car accident. Indeed, Shaya's Complaint fails to identify *any* rationale that may have led Belcastro to report that Shaya's vehicle was involved in an accident.

Second, and more importantly, Michigan law is clear that an "action for abuse of process lies for the improper use of process *after it has been issued, not for maliciously causing it to issue*." *Id.* at 595 (emphasis added). In other words, "making false statements to law enforcement officers and then repeating those statements throughout the investigation … [are] insufficient [allegations] to establish [a] claim for abuse of process" because "[t]he initiation of a suit is not itself actionable as an abuse of process; the plaintiff must provide an improper use of process after the commencement of the proceeding." *Vaysman v. Shane*, 2009 WL 3837357 at *7 (Mich. Ct. App. Nov. 17, 2009); *see also Ghaith v. Rauschenberger*, 09-cv-14336, 2010 WL 4982795 at *11 (E.D. Mich. Dec. 2, 2010) ("providing information to state authorities that leads to a criminal prosecution is not an abuse of process").

14

In this case, Shaya has not pleaded that Belcastro took any action *after* Mileski issued Shaya the misdemeanor ticket. Indeed, all of Belcastro's alleged false statements to the police were made *before* the initiation of any formal criminal proceedings against Shaya. Thus, Shaya has failed to plead that Belcastro took "an act in the use of process" and his abuse of process claim therefore fails to state a viable claim. *Friedman*, 312 N.W.2d at 594.

### C.  Shaya Has Failed to State a Claim Against Belcastro for Violating Federal Law

Shaya has alleged in his § 1983 claim that Belcastro intentionally deprived Shaya of his rights under, among other things, the Equal Protection and Due Process Clauses of the 14th Amendment. (*See* Compl. at ¶104.) "A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003).

Shaya attempts to bring Belcastro, a private citizen, within the scope of § 1983 by arguing that Belcastro conspired with City police officers to violate his (Shaya's) constitutional rights. (*See* Compl. at ¶¶104-105.) Shaya is correct that a private party can act under the color of state law for purposes of § 1983 if the private party "is a willful participant in a joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970). However, as the Sixth Circuit has repeatedly held, "[i]t is well-settled that conspiracy claims must be pled

with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Shaya's Complaint contains nothing more than just these kinds of "vague and conclusory allegations." Indeed, Shaya has pleaded no specific facts to support a finding that Belcastro and Tardif even knew each other, that they communicated prior to the hit-and-run accident, or that they conspired together to frame Shaya for that crime. Shaya's conspiracy claim with respect to Belcastro lacks the requisite material facts and specificity required and it therefore fails to state a cognizable claim.

### D. Shaya Has Failed to State a Claim Against Belcastro for the Intentional Infliction of Emotional Distress

"Under Michigan law, a *prima facie* case for intentional infliction of emotional distress requires the following elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Ruffin–Steinback v. dePasse,* 267 F.3d 457, 464 (6th Cir. 2001) (internal quotation marks omitted). "The outrageous conduct requirement is satisfied only by conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Liability arises, moreover, only where the distress inflicted is so severe that no reasonable man could be expected to endure

16

it." *Andrews v. Prudential Secs., Inc.,* 160 F.3d 304, 309 (6th Cir. 1998) (internal citations and quotations omitted). "It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Graham v. Ford,* 237 Mich. App. 670, 604 N.W.2d 713, 716 (1999) (citing *Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 374 N.W.2d 905, 908 (1985)).

At most, Shaya has pleaded that Belcastro made false statements to the police about a vehicle that had been assigned to Shaya. Belcastro made *no* comments about Shaya specifically, and repeatedly disclaimed the ability to identify the driver of the car that struck him. Shaya has also failed to plead any facts to support a finding that Belcastro knew the vehicle he reported to police was assigned to Shaya. Shaya has simply not pleaded any facts to support a finding that Belcastro *intentionally* took any action aimed at *Shaya*. Shaya has therefore not alleged any conduct by Belcastro that invokes the level of outrage necessary to plead a claim of intentional infliction of emotional distress under Michigan law.

### E. Shaya Has Failed to State a Claim Against Belcastro for Defamation

In order to state a claim under Michigan law for against Belcastro defamation, Shaya must allege that Belcastro made "(1) a false and defamatory

statement concerning [Shaya], (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part [Belcastro], and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *Ireland v. Edwards*, 230 Mich. App. 607, 584 N.W.2d 632, 636-637 (1998).

In this case, Shaya's claim for defamation fails for a simple reason: Belcastro never accused *Shaya* of anything. Indeed, as described repeatedly above, Belcastro repeatedly told police that he could *not* identify the driver of the other car involved in the hit-and-run accident, and he never identified Shaya as having anything to do with the accident. Belcastro's identification of a vehicle and license plate that happened to be assigned to Shaya is insufficient to state a claim for defamation. Furthermore, Belcastro told police the driver of the car was African American, a description that does not match Shaya. Notably, Shaya has not cited a single case in which any court has upheld a claim for defamation under these circumstances. Shaya has therefore failed to state a claim for defamation against Belcastro.

**F.  The Court Will Not Allow Shaya to Further Amend His Complaint**

In his brief opposing Belcastro's motion, Shaya sought leave to amend his Complaint to remedy any pleading deficiencies. (See Shaya Response Brief, ECF #53 at 19-20, Pg. ID 763-764.) "Although Federal Rule of Civil Procedure 15(a)

18

establishes a liberal policy toward granting leave to amend, a 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is … not a motion to amend.'" *Graves v. Dept. of Veterans Affairs*, No. 13-cv-14140, 2014 WL 4145403, at *10 (E.D. Mich. Aug. 20, 2014) (quoting *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014)). Shaya's request for leave to amend consists of the sort of "throwaway language" that does not constitute a motion to amend under Rule 15(a). *See Kuyat*, 747 F.3d at 444.

Furthermore, when the Court allowed Shaya to file a Fourth Amended Complaint to include additional allegations against Belcastro, it expressly warned Shaya that it would "be far less inclined to allow further amendment if the Court determines that the allegations against Defendant Belcastro in the Fourth Amended Complaint are deficient." (ECF #47 at 2, Pg. ID 554.) Having reviewed Shaya's Fourth Amended Complaint and held oral argument, the Court is not willing now to allow Shaya to amend his Complaint again.

## CONCLUSION

For all of the reasons in stated in this Opinion and Order, **IT IS HEREBY ORDERED** that Belcastro's Motion to Dismiss the claims against him in the Fourth Amended Complaint (ECF #51) is **GRANTED**.

                                    s/Matthew F. Leitman  
                                    MATTHEW F. LEITMAN  
Dated:  November 20, 2014     UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 20, 2014, by electronic means and/or ordinary mail.

                                    s/Holly A. Monda  
                                    Case Manager  
                                    (313) 234-5113